DOC NO
REC'D/FILED

2021 NOV 18 AM 11: 23

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

ROGER HOFFMAN,

Defendant.

SEALED INDICTMENT

Case No. **21 CR 126 JDP**

18 U.S.C. § 371
52 U.S.C. § 30121
52 U.S.C. § 30122
52 U.S.C. § 30109
26 U.S.C. § 7206(2)
18 U.S.C. § 1512(b)(3)

THE GRAND JURY CHARGES:

## BACKGROUND

1.     At all times material to this indictment, unless otherwise noted:

### Relevant Individuals

a.     The defendant, ROGER HOFFMAN, a foreign national, engaged in a scheme to unlawfully funnel over $400,000 into federal and State elections in over 1,400 separate transactions spanning more than a decade. HOFFMAN was born in Madison, Wisconsin in 1956 and was a United States citizen from birth until on or about July 9, 2009. HOFFMAN worked as a self-employed investor. On or about January 15, 2009, HOFFMAN became a citizen of St. Kitts and Nevis. On or about July 9, 2009, while in Vancouver, Canada, HOFFMAN executed a formal Oath of Renunciation of Nationality of the United States before a United States consular officer. His loss of United States nationality was approved on or about July 15, 2010. After renouncing his

United States citizenship, HOFFMAN maintained residences in Madison, Wisconsin and Vancouver, Canada.

b. M.W. was a United States citizen residing in Madison, Wisconsin. Beginning in or about April 2007, M.W. was employed as HOFFMAN's personal assistant. M.W.'s duties included running his personal errands, opening and sorting his mail, paying his bills, maintaining his vehicles, cleaning his condominium units located in Madison, Wisconsin, and serving as a conduit for unlawful campaign contributions and donations.

### The Election Act

c. In the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, et seq. ("Election Act"), Congress prohibited certain financial influences on the election of candidates for federal, State, and local office. To prevent the influence of foreign nationals on elections, the Election Act prohibited foreign nationals, directly or indirectly, from making contributions, donations, or independent expenditures in connection with federal, State, or local elections.

d. To promote transparency and to prevent individuals from circumventing these regulations, the Election Act prohibited a person from making a political contribution in the name of another person or allowing one's name to be used to effect such a contribution. The prohibited conduct included advancing or reimbursing funds to a conduit, also known as a straw donor, for the purpose of having the conduit pass the funds on to a federal candidate, to a candidate's federal campaign

2

committee or joint fundraising committee, or to an independent expenditure committee spending to influence the outcome of a federal campaign.

e.　　The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act. To deter corruption and the appearance of corruption and to instill public confidence in the election process, the Election Act required the FEC to publish specific information about the amounts and sources of political contributions to federal candidates and their political committees.

f.　　Pursuant to the Election Act, the FEC required federal campaign committees to file periodic reports of receipts and disbursements identifying, among other things, each person who contributed to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and amount of any such contribution. In preparing these reports, federal candidates and political committees relied on the information provided by the contributor or donor, including the individual's name, address, and occupation. These periodic reports, which were filed with the FEC and made publicly available, were intended to provide citizens with a transparent record of all contributions to candidates for federal office.

The Internal Revenue Code

g.　　The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States and collecting taxes owed to the United States.

3

h.     The Internal Revenue Code and associated statutes and regulations required employers to withhold from employees' gross pay federal income taxes and Federal Insurance Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and to account for and pay the withheld taxes to the IRS on a quarterly basis, but no later than the last day of the month following the end of the quarter. These taxes are commonly referred to collectively as "trust fund taxes." Trust fund taxes are to be held in trust for the United States by the employer and required to be paid over for the benefit of employees.

i.     In addition to the trust fund taxes that must be withheld from pay, employers are separately required to make contributions under FICA for Social Security and Medicare in amounts matching the amounts withheld from their employees' pay for those purposes. Such employer contributions are likewise required to be remitted to the IRS no later than the last day of the month following the end of the quarter. Trust fund taxes and employers' FICA contributions are commonly referred to as "employment taxes."

j.     Employers are required to file, one month after the conclusion of the calendar quarter, an Employer's Quarterly Federal Tax Return, Form 941, setting forth the total amount of income taxes withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits.

<u>COUNT 1</u>

1.     Paragraph 1 of the Background Section is incorporated here.

2.      From in or about August 2008 through in or about January 2021, in the Western District of Wisconsin and elsewhere, the defendant,

ROGER HOFFMAN,

knowingly conspired and agreed with M.W., and with other persons both known and unknown to the grand jury, to:

a.      knowingly defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of a department or agency of the United States, specifically: the IRS in the ascertainment, computation, assessment, and collection of federal taxes;

b.      knowingly and willfully make contributions and donations by a foreign national, directly and indirectly, in connection with federal and State elections, which contributions and donations aggregated $25,000 and more in a calendar year, in violation of 52 U.S.C. §§ 30121 and 30109(d)(1)(A)(i); and

c.      knowingly and willfully make contributions in the name of another person, which contributions aggregated $25,000 and more in a calendar year, in violation of 52 U.S.C. §§ 30122, 30109(d)(1)(A)(i), and 30109(d)(1)(D).

<u>Purposes of the Conspiracy</u>

3.      It was a purpose of the conspiracy to funnel unlawful campaign contributions and donations from HOFFMAN, a foreign national, through M.W. to numerous candidates and committees in connection with federal and State elections in order for HOFFMAN to influence the United States electoral system, all while

concealing the true source of the money from the committees, regulators, law enforcement, and the public.

4. It was a purpose of the conspiracy for the conspirators to misrepresent the source and nature of M.W.'s income to the IRS and to avoid payment of federal taxes.

<u>Manner and Means</u>

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

5. HOFFMAN would and did employ M.W. as his personal assistant in Madison, Wisconsin. HOFFMAN would and did pay M.W. for services that included serving as a conduit for unlawful campaign contributions.

6. HOFFMAN would and did make unlawful foreign contributions and donations in connection with federal and State elections in M.W.'s name, and variations on M.W.'s name, using funds that HOFFMAN caused to be deposited into accounts opened by M.W.

7. HOFFMAN would and did make unlawful contributions in the name of another, that is, in M.W.'s name and variations on M.W.'s name, for the purpose of influencing elections for federal office, using funds that HOFFMAN caused to be deposited into accounts opened by M.W.

8. For tax years 2012 through 2019, HOFFMAN would and did aid and assist M.W. in preparing and filing with the IRS personal income tax returns that falsely characterized the salary or wages that he paid M.W. as interest on a promissory note.

9. From approximately the second quarter of 2007, through the fourth quarter of 2020, HOFFMAN would and did fail to file Form 941 with the IRS, fail to withhold employment taxes from M.W.'s salary and wages, and fail to pay over employment taxes to the IRS related to M.W.'s employment.

<u>Overt Acts</u>

In furtherance of the conspiracy, and to accomplish its objectives, the following overt acts were committed in the Western District of Wisconsin and elsewhere:

10. Beginning in or about August 2008, HOFFMAN gave money to M.W. and directed her to make contributions to specific candidates and committees in specific amounts, using her own name, or variations on her name.

11. After HOFFMAN renounced his United States citizenship on or about July 9, 2009, he continued to give money to M.W. and to direct her to contribute it to specific candidates and committees in specific amounts, using her own name or variations on her name.

12. On or about January 21, 2011, HOFFMAN caused M.W. to open BMO Harris Bank (formerly Marshall & Ilsley Bank) checking account ending in 3357.

13. On or about March 13, 2012, HOFFMAN caused M.W. to open Wells Fargo Bank checking account ending in 3751. HOFFMAN directed M.W. to obtain checks and debit cards for that account bearing her middle and last names, "A.W."

14. HOFFMAN retained the login credentials, checkbooks, and debit card information associated with BMO Harris Bank checking account ending in 3357 and Wells Fargo Bank checking account ending in 3751 (collectively, the "Accounts").

7

15. HOFFMAN caused funds belonging to him to be deposited into the Accounts.

16. HOFFMAN used the funds in the Accounts to make contributions and donations to candidates for federal and State office, their campaign committees, independent expenditure committees spending to influence federal elections, and committees of political parties by writing checks drawn on the Accounts and by using the debit cards linked to the Accounts to make contributions and donations online.

17. HOFFMAN falsely represented to the recipients of the contributions and donations that M.W. or A.W., or variations on those names, was the contributor or donor, when in fact HOFFMAN was the true source of the funds.

18. HOFFMAN made approximately 1,403 contributions and donations to federal and Wisconsin candidates and committees in the name of M.W. or A.W., or variations of those names, aggregating the following approximate dollar amounts:

| YEAR | FEDERAL | WISCONSIN | TOTAL |
|------|---------|-----------|-------|
| 2008 | $14,400 | - | $14,400 |
| 2009 | $1,000 | - | $1,000 |
| 2010 | $16,893 | $1,250 | $18,143 |
| 2011 | $250 | $2,500 | $2,750 |
| 2012 | $60,450 | $14,500 | $74,950 |
| 2013 | $9,750 | $1,750 | $11,500 |
| 2014 | $41,250 | $5,250 | $46,500 |
| 2015 | $5,000 | $3,750 | $8,750 |
| 2016 | $73,350 | $4,000 | $77,350 |
| 2017 | $9,150 | $500 | $9,650 |
| 2018 | $61,160 | $7,000 | $68,160 |
| 2019 | $5,100 | $1,750 | $6,850 |
| 2020 | $63,849 | $3,250 | $67,099 |

| TOTAL | $361,602 | $45,500 | $407,102 |
|-------|----------|---------|----------|

19.     HOFFMAN aided and assisted M.W. in preparing an IRS Form 1040, U.S. Individual Tax Return, for tax year 2012, which M.W. signed under penalty of perjury and filed with the IRS. M.W.'s 2012 Form 1040 failed to report M.W.'s salary or wages from HOFFMAN, falsely described M.W.'s occupation as "finance," and falsely reported that M.W. received $7,878 in interest income on a "personal note receivable."

20.     HOFFMAN aided and assisted M.W. in preparing IRS Forms 1040, U.S. Individual Income Tax Return, for tax years 2013 through 2019, which M.W. signed under penalty of perjury and filed with the IRS. M.W.'s Forms 1040 for tax years 2013 through 2019 failed to report M.W.'s salary or wages from HOFFMAN, falsely described M.W.'s occupation as "private investor," and falsely reported that M.W. received $54,250 per year in interest income on a promissory note.

21.     At HOFFMAN's direction, M.W. attached a handwritten note to her federal income tax returns for tax years 2013 and 2014 that falsely stated that M.W. received interest income from a promissory note issued on December 28, 2012 in the amount of $350,000 at an interest rate of 15.5% per annum.

22.     HOFFMAN wrote "Int" on the notation line of M.W.'s paychecks, or directed M.W. to do so, indicating "interest," when they were not in fact interest payments.

23.     From in or about the second quarter of 2007, and continuing through in or about the fourth quarter of 2020, HOFFMAN failed to file IRS Form 941 as required,

9

failed to withhold employment taxes from M.W.'s salary and wages, and failed to pay over employment taxes to the IRS related to M.W.'s employment.

(All in violation of Title 18, United States Code, Section 371).

<u>COUNTS 2-4</u>

1.    Paragraph 1 of the Background Section is incorporated here.

2.    On or about the dates set forth below, in the Western District of Wisconsin and elsewhere, the defendant,

ROGER HOFFMAN,

being a foreign national, knowingly and willfully, directly and indirectly, made contributions and donations of money and other things of value in connection with federal and State elections and contributions and donations to committees of political parties, aggregating $25,000 and more in a calendar year, with each calendar year constituting a separate count of this indictment:

| COUNT | CALENDAR YEAR | FEDERAL | WISCONSIN | TOTAL |
|-------|---------------|---------|-----------|-------|
| 2 | 2016 | $73,350 | $4,000 | $77,350 |
| 3 | 2018 | $61,160 | $7,000 | $68,160 |
| 4 | 2020 | $63,849 | $3,250 | $67,099 |

(All in violation of Title 52, United States Code, Sections 30121 and 30109(d)(1)(A)(i) and Title 18, United States Code, Section 2).

<u>COUNTS 5-7</u>

1.    Paragraph 1 of the Background Section is incorporated here.

2.    On or about the dates set forth below, in the Western District of Wisconsin and elsewhere, the defendant,

10

ROGER HOFFMAN

knowingly and willfully made contributions to federal candidates and committees in the name of another person, aggregating $25,000 and more in a calendar year, with each calendar year constituting a separate count of this indictment:

| COUNT | CALENDAR YEAR | FEDERAL CONDUIT CONTRIBUTIONS |
|---|---|---|
| 5 | 2016 | $73,350 |
| 6 | 2018 | $61,160 |
| 7 | 2020 | $63,849 |

(All in violation of Title 52, United States Code, Sections 30122, 30109(d)(1)(A)(i), and 30109(d)(1)(D) and Title 18, United States Code, Section 2).

## COUNTS 8-12

1. Paragraph 1 of the Background Section is incorporated here.

2. On or about the dates set forth below, in the Western District of Wisconsin and elsewhere, the defendant,

ROGER HOFFMAN

willfully aided, assisted in, procured, counseled, and advised the preparation and presentation to the IRS of the following U.S. Individual Income Tax Returns, IRS Forms 1040, for M.W., which were fraudulent and false as to material matters, in that, as HOFFMAN then and there knew and believed, they contained the falsehoods described below, with each fraudulent and false tax return constituting a separate count of this indictment:

11

| COUNT | TAX YEAR | APPROXIMATE DATE FILED | MATERIAL FALSEHOODS |
|---|---|---|---|
| 8 | 2015 | 5-26-16 | A 2015 Form 1040 on which M.W. falsely reported that her occupation was "private investor," that she earned no wage or salary income, and that she earned $54,250 in interest income from a "Promissory Note Receivable" during the 2015 tax year, when, in fact, her occupation was personal assistant, she earned at least $54,250 in unreported wage and salary income from HOFFMAN, and she earned no interest income from a promissory note. |
| 9 | 2016 | 9-7-17 | A 2016 Form 1040 on which M.W. falsely reported that her occupation was "private investor," that she earned no wage or salary income, and that she earned $54,250 in interest income from a "Promissory Note Receivable" during the 2016 tax year, when, in fact, her occupation was personal assistant, she earned at least $54,250 in unreported wage and salary income from HOFFMAN, and she earned no interest income from a promissory note. |
| 10 | 2017 | 9-26-18 | A 2017 Form 1040 on which M.W. falsely reported that her occupation was "private investor," that she earned $2,245 in wage or salary income, and that she earned $54,250 in interest income from a "Promissory Note Receivable" during the 2017 tax year, when, in fact, her occupation was personal assistant, she earned at least $54,250 in unreported wage and salary income from HOFFMAN, and she earned no interest income from a promissory note. |
| 11 | 2018 | 10-3-19 | A 2018 Form 1040 on which M.W. falsely reported that her occupation was "private investor," that she earned no wage or salary income, and that she earned $54,250 in interest income from a "Promissory Note Receivable" during the 2018 tax year, when, in fact, her occupation was personal assistant, she earned at least $54,250 in unreported wage and salary income from HOFFMAN, and she earned no interest income from a promissory note. |

| | | | A 2019 Form 1040 on which M.W. falsely reported that her occupation was "private investor," that she earned no wage or salary income, and that she earned $54,250 in interest income from a "Promissory Note Receivable" during the 2019 tax year, when, in fact, her occupation was personal assistant, she earned at least $54,250 in unreported wage and salary income from HOFFMAN, and she earned no interest income from a promissory note. |
|---|---|---|---|
| 12 | 2019 | 10-8-20 | |

(All in violation of Title 26, United States Code, Section 7206(2)).

<u>COUNT 13</u>

1.      Paragraph 1 of the Background Section is incorporated here.

2.      Between on or about January 29, 2021, and on or about February 10, 2021, in the Western District of Wisconsin, the defendant,

ROGER HOFFMAN,

knowingly and corruptly attempted to persuade M.W. with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, specifically:  HOFFMAN attempted to corruptly persuade M.W. to withhold information from and to provide false information to agents of the Federal Bureau of Investigation and the Internal Revenue Service regarding the commission and possible commission of federal offenses including conspiracy, making contributions of a foreign national, making contributions in the name of another, and aiding and assisting in the filing of false tax returns.

(All in violation of Title 18, United States Code, Section 1512(b)(3)).

13

A TRUE BILL

_____
PRESIDING JUROR

Indictment returned: 11-17-21

_____
TIMOTHY M. O'SHEA
Acting United States Attorney

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice